The opinion of the court was delivered by
Miller, J.
This is an appeal by the plaintiffs from the judgment in favor of two of them for the property and revenues claimed of the defendant 0. Newton, the judgment of the lower courtdenying relief as to one and not according to the two other plaintiffs the full measure of their demand. On the part of defendant we have an answer *1540 to the appeal, asking that as to one of the plaintiffs, her relinquishment of title which the lower court did not maintain, be decreed binding on her, and that the amount of the credit claimed by defendant be Increased.
The material facts of this controversy are: In 1889 the three plaintiffs, Mrs. Eate Saunders Brigham, J. W. Brigham and Wesley G. Brigham, all then minors, became entitled to a plantation and other property in the parish of Ouachita, as the heirs of their uncle. A suit was brought against his heirs in the United States District Court for the Western District of Louisiana, for the property left by him, and to represent the plaintiffs in that suit, as well as to attend to their interests in the succession of their uncle, their mother employed defendant as counsel. Thus began, in 1889, his relations out of which this controversy arises. The plaintiff rendered the professional services required, the suit was defeated and plaintiffs, still minors, were put in possession as heirs of the plantation and other property falling to them in the partition. It is urged by defendant that his relations with plaintiff and their mother, subsequently qualified as their tutrix, was simply that of counsel in the suit for the property and to conduct the partition and other succession proceedings. The plaintiffs claim he was not only counsel, but the business agent; of their mother, not, it is said, qualified for business, and needing his assistance. The record shows he leased the plantation, received rent notes, paid taxes, we infer from the tax receipts produced by him, and attended to the plantation business. It is in evidence that from the outset in 1889, he was in habit of advancing money to the plaintiff’s mother, and these advances were kept up to plaintiffs after they became of age. With relations of this character in 1890, the plantation was advertised to be sold for the taxes of 1889, and Mrs. Saunders brought the tax notice to him with the request he pay the taxes, one hundred and twenty-one dollars. He testifies that he refused; that he had no money for the minors; that he stated he would buy the property at the tax sale; that it would be security for advances; that plaintiffs would have one year to redeem, and, besides, he suggested this would perhaps save the property in the event of an unfavorable issue of the Federal court suit then pending, to all which he testified the mother consented, and in turn urged. Her testimony is, in substance, she took the tax notice to him, asked him *1541 to pay the taxes; that he then had the funds; that he refused— stated that he would buy, and. advised letting him buy, to save the property from the litigation in the United States Court. This was followed by his purchase of [the property for one hundred and twenty-one dollars, the tax deed bearing date the 5th of July, 1890.
The value of the plantation is averred to be over five thousand dollars. On that point we have the indirect testimony that for the years 1890, 1891 and 1892 a lease had been effected by defendant for plaintiffs just previous to this tax sale at seven hundred and fifty dollars per annum.
As to the means of plaintiffs when this tax sale occurred, the record shows that the three rent notes aggregating two thousand and seventy-five dollars were received by defendant, turned over or placed at the mother’s disposal, and were used by her as collateral to secure his advances, at the time of the sale much less than •the notes; these notes were paid later, and there is in the record ".his receipt to her for the proceeds. Besides the notes the minors -owned stock in an ice company, which realized, later, one thousand -one hundred dollars. In June, 1890, but a few days before the sale, we find a paper purporting to be a private sale of this stock to defendant, later on an order of court for the sale and an agreement by her that defendant should apply the proceeds, eleven hundred dollars, for his fee in the Federal court litigation. The bearing of this testimony on the question of the ability of the plaintiff’s mother to pay a tax bill of one hundred and twenty-one dollars, and avert the .sale of a valuable plantation, has been vigorously pressed in the argument.
After, as before this tax sale, defendant continued his advances to plaintiffs and to the mother. He claims to have applied the rent notes to their wants, and it is impressive if the tax sale carried the title the rents were his from July, 1890. Thera are brought up in this record a mass of.letters and notes addressed to defendant by plaintiffs and their mother for money to pay store bills, doctors’ bills and other wants of the family. Up to a short time before the institution of this suit, the defendant responded to these demands, and the whole course of dealing seems to imply that he stood in a very different relation than that of mere counsel in the suit in the .Federal court, and reflects a light backward to the tax sale when he *1542 purchased the property at the tax sale, the sequel of the mother’s application to pay the taxes.
It also appears that the defendant made an offer of settlement with the plaintiffs which they declined, It further appears that subsequent to the tax sale he obtained in the course of his advances relinquishments of title from plaintiffs on which he relies. All relations came to a close by the disinclination of defendant to continue his advances and this suit followed.
The petition charges, in effect, the tax sale was a nullity by reason of the relation of attorney and client subsisting between the parties; that the defendant had money in his hands to pay the taxes and his purchase was a violation of duty and trust; on the same grounds, and, besides, because a private sale of minor’s property for no price paid, the sale of the ice stock, it is averred, conferred no title on defendant; the relief sought is a judgment for the property, its revenues and for the ice stock and its dividends. The answer avers the validity of the tax sale; that there was no agency to preclude him from purchasing; that plaintiffs have ratified it by their subsequent conduct and the relinquishments of title; there are also the pleas of prescription of one and three years; and in the alternative thbre is the prayer, if the sale is annulled, that he have judgment for useful improvements, taxes paid, and there are reconventional demands for the amounts advanced plaintiffs, evidenced by the mass of vouchers brought up in the originals, and in respect to which we are not much aided by classification in the briefs, pleadings or discussions. The judgment of the lower court was in favor of two of the plaintiffs, Mrs. Brigham and Wesley G. Saunders, the one coming of age in 1891 and marrying soon after, the other attaining majority in 1894, for the property; rejecting the demand of J. W. Saunders attaing his majority after the tax sale, and the lower court holding him bound by his relinquishment. The lower court, excluding all inquiry, as we gather the theory of the judgment, of revenues prior to 1892, and all claims of defendant for improvements, but charging Mrs. Brigham and W. G. Saunders with the amounts advanced them, and crediting them with the revenues subsequent to 1892, decreed each liable to defendant on this method of adjusting accounts, one for six hundred and seventy-six dollars, and the other for three hundred and eighty-two dollars. As to the ice stock the judgment maintains defendant’s title. As already stated plaintiffs on this *1543 appeal insist on the demands in the petition; defendant asks in his' answer for the modification already stated.
The relation defendant bore to these plaintiffs and their mother, who engaged his services, is, in our opinion, of controlling influence. His position is that he stood simply as their counsel in the litigation in the Federal court, and was as free to buy at the tax sale as any stranger. The property he bought, i. e. the plantation, was the subject of the litigation in which he was counsel.His relation in that capacity aloue imposed, in our view', a restriction of his capacity to buy his client’s property. The confidence that the client gives to his attorney; the influence the relation itself enables the attorney to exert is the basis of the general principle that any transaction between the client and attorney by which he obtains the client’s property will be scrutinized closely and set aside when the attorney is benefited at the client’s expense. The principle needs no elaboration, is of constant recognition, and finds the clearest exposition in the text-books and decisions. ' 1 Story’s Equity Jurisprudence, Sees. 310, 311, 312. There was more than the relation of client and attorney in this case. The current of the testimony is that the plaintiff’s mother looked to defendant for that attention to her business she was unwilling or incompetent to bestow. At the outset he leased for her the plantation. Whether delivered to him or pledged for his advances we find him practically in control of the rent notes, when but a small amount was due him for advances.With these securities for his advances inhis hands or, as we conclude, would have been delivered to him, if asked for, she might well expect he would make the small advance for the taxes. If we look beyond the beginning of defendant’s relation for the illustration of its character, all the usual indications present themselves that mark the informal agencies so usual in everyday life. In 1889, 1890,. 1891, 1892 and to a later period there are the frequent calls on him from plaintiffs and their mother for such money as they required. True he treats them as loans or advances. They carry to our minds a deeper significance. Unless these defendants had some right to call on him, it is not reasonable to suppose they would have made these calls on him for money, and still less conceivable he would have responded. In our view the entire intercourse between these parties from the outset puts the defendant in the position that authorize her when threatened with a tax sale to seek *1544 his advice and assistance, and in that appreciation she carried to him the tax notice. It he had simply refused notwithstanding her notes were practically at his disposal, it was reasonable to suppose she could and would have made other arrangements to avert a tax sale of a valuable plantation for the pittance of one hundred and twenty-one dollars, but instead he made the suggestion consented to by her, it is true, of the sale and purchase by himself. If then the relation of attorney as a general rule precludes his purchase of the client’s property there is in this case the added force to the prohibition arising from the intercourse and transactions between defendant and the plaintiff’s mother which prompted her to call on him for that advice directly leading to his purchase. Can he profit by that purchase to the injury of the client who soughthis advice? It seems to us, too, that with the large margin of the rent notes unpledged at the time without reference to the one thousand one hundred dollars of ice stock, the subject it is true of the private sale to defendant, but a short time previous, and the ownership of a valuable plantation, excluding any necessity to sell the plantation for one hundred and twenty-one dollars, there is the greater reason to hold that defendant’s relation to these plaintiffs, whether viewed as counsel, or in that other aspect in which the testimony presents him, precluded his acquisition of the property.
There is yet another view that has had its weight with us. It is difficult to resist the conclusion from defendant’s subsequent conduct that he did not appreciate his title as ownership in the ordinary sense. The significance of his advances to parties who had no claim on him if he was vested with full title, is obvious. The absence of any claim on his part as purchaser to the rent notes which the tax sale carried, if it conveyed ownership at all, is impressive. We have in the record more than one effort on his part to obtain relin-quishments of plaintiff’s claims to the property. There was no occasion for any surrender to him of their claims if the tax title had the efficacy now attributed to it. With all the light obtainable from the record and the application of the appropriate legal principle, we can not hold the tax title obtained under the circumstances of this case divested plaintiff’s ownership.
If, then, the defendant held the legal title with that reservation in favor of the plaintiffs, the law implies and the facts support, could he impose conditions or terms on them other or beyond the reim *1545 bursement of his expenses incident to his purchase? In the ordinary-case the tax title becomes absolute by the failure to redeem. But can redemption be stipulated or failure to redeem invoked to convert into an absolute title, one originating in trust and confidence, and the character of which is so well defined by law? The answer we think obvious.
The relinquishments of- title by Mrs. Brigham and J. W. Saunders are relied on by defendants. We must in considering these relinquishments give due weight to the circumstances in which the papers were obtained. The defendant had possession of the plantation and in the full enjoyment of its revenues. The rent notes that might have saved the plantation were absorbed, it is claimed, by defendant’s advances and interest; the ice stock, worth one thousand one hundred dollars, had been taken before the tax sale under the private sale, followed by the judicial sale. In less than two years these plaintiffs had lost all the property derived from their uncle, and which at his death seems to have been wholly unincumbered. It was in the course of the advances by the defendant to Mrs. Brigham and J. W. Saunders that these relinquishments were made. If we can rely on their numerous applications it was destitution that prompted their requests for pecuniary aid from defendant, on whom they conceived they had a claim. The notes and letters for the money that defendant gave are appealing in their character in describing the distress for clothes, food and necessaries. What effect can we give relinquishments under such circumstances, if title, legal or equitable, existed in those from whom these relinquishments were obtained? The relinquishments purport to be one for money loaned; another for value received, another is attached to a receipt of fifteen dollars in full settlement of all her claims for the property inherited by her. Others are of similar character; all evidently based on the various sums from time to time advanced by the defendant. We can not adjust the accounts between these parties by classification necessarily of great detail based on the mass of vouchers in the record. As we read the record there was the application in 1892 of the two thousand dollars derived from the rent notes. That must have settled the advances, or, at least, a large part, up to that date. The amounts, claimed from the plaintiff in this suit are, respectively, six hundred and fifty dollars, one thousand and fifty-five dollars and nine hun *1546 dred and fifty-five dollars. With the settlement in 1892, absorbing the two thousand dollars, and in view of the amounts claimed to be still due, on what basis approximating to equivalents do the relin-quishments rest of the title to the plantation. They are supported by no adequate consideration. If, as we think, the defendant held the plantation for the heirs, they were entitled to the property; he was entitled to be reimbursed his advances, but, in our opinion, he could not defeat plaintiffs’ right to property by relinquishments based' on advances to parties entitled to the property and its revenues. There are grave charges connected with the obtaining these receipts. We pass over this part of the case. We feel bound to state such charges are not to be readily accepted and we do not think they are proved.
The ice stock transaction has been the subject of severe criticism. We can not recognize the private sale of minors’ property, but there was a subsequent judicial sale. It is proved, however, that defendant stipulated for his fee of one thousand one hundred dollars, and we conclude earned it. It is not questioned the ice stock brought its full value, one thousand one hundred dollars, and the proceeds of the stock paid the fee, and that fee for services in the interest of minors to protect their property was binding on the plaintiffs.
We have been compelled to apply to this case legal principles from which we are inclined to believe defendant did not intend to depart. He did not seek the position in which he found himself after his purchase. He was clothed with the legal title. The property required expenses to keep it in proper condition. The plaintiffs had no means to redeem and none to pay him either the money paid for the tax title, or for the improvements on the property he was compelled to make, nor his advances, small as we think they were, in comparison with the rent notes used for that purpose. It is in proof he offered a settlement, but no settlement requiring money from plaintiffs was ia their power and his retention of the property and this suit was the result.
The views expressed indicate our conclusions as to the proper ad - justment of the rights of the litigants. The plaintiffs are entitled to the plantation and its revenues from the date of his purchase. Although defendant’s advances were in part to the tutrix, we do not think he is to be subjected to the rule that restricts the charges of the tutrix to amounts within the minor’s revenues. The defendant. *1547 could have discharged himself from all liability by transferring to her the property and its revenues. Every payment or advance by him to the tutrix or to Mrs. Brigham after her marriage, and W. G« Saunders after his majority, and to J. W. Saunders, are to be allowed) him with interest. To the extent the plantation has been improved in value, the full amount of taxes and other necessary expenses for the maintenance of the plantation must be reimbursed. In the condition of the record we can not adjust the accounts, but will remand the case for that purpose.
It is therefore ordered, adjudged and decreed that the judgment of the lower court be avoided and reversed; it is further ordered, adjudged and decreed that plaintiffs be and they are hereby decreed to be the owners of the plantation sued for in this case and described in their petition; that defendant’s tax title thereto, of date 5th July, 1890, be annulled; that plaintiff do have and recover from defendant the revenues thereof from the date of his purchase, diminished by the taxes, value of useful improvements made by defendant and by all payments or advances by him to Mrs. Saunders as tutrix, or to the plaintiffs, with the interest thereon, the revenues for 1890, 1891 and 1892 being fixed by the rent notes; that to adjust the account the case be and is hereby remanded, and in all other respects tha plaintiff’s demands be rejected and that defendant pay costs.